# IN THE COURT OF APPEALS OF IOWA

No. 16-1243
Filed October 26, 2016

**IN THE INTEREST OF N.L., J.L., V.L., and A.L.,**
**Minor Children,**

**J.L., Father,**
    Appellant,

**D.L., Intervenor,**
    Appellant.
_____

Appeal from the Iowa District Court for Polk County, Susan Cox, District

Associate Judge.


A father appeals from the termination of his parental rights to his four

children, and an uncle/intervenor appeals from the custody determination of the

juvenile court regarding two of the children. **AFFIRMED ON BOTH APPEALS.**



Tabitha L. Turner of Turner Law Firm, P.L.L.C., Des Moines, for appellant
father.

Andrew J. Tullar of Tullar Law Firm, P.L.C., Des Moines, for appellant
intervenor.

Thomas J. Miller, Attorney General, and Kathrine S. Miller-Todd and Janet
L. Hoffman, Assistant Attorneys General, for appellee.

Paul White of the Juvenile Public Defender's Office, Des Moines, for minor
children.


Considered by Danilson, C.J., and Mullins and Bower, JJ.

**DANILSON, Chief Judge.**

A father appeals from the termination of his parental rights to his four children, and an uncle/intervenor appeals from the custody determination of the juvenile court regarding two of the children. The father contends termination is not in the children's best interests and an exception to preclude termination applies due to the strong parent-child bond. Due to the father's failure to address his ongoing substance-abuse and mental-health issues, we find termination is in the children's best interests. The uncle asserts the court erred in determining long-term placement of two of the children in his care was not in their best interests. We conclude the court did not improperly reach its decision in respect to guardianship and custody post-termination.

**I. Background Facts & Proceedings.**

The father has four children, N.L., J.L., V.L., and A.L. Two of the children, N.L. and J.L., both nine years old at the time of the termination hearing, have the same mother, K.G. The two younger children, V.L. and A.L., ages five and two, have the same mother, S.L.[1]

In May 2013, N.L., J.L., and V.L. came to the attention of the department of human services (DHS) due to the father and S.L.'s use of methamphetamine resulting in improper supervision of the children. The children were removed and placed with the uncle/intervenor. N.L., J.L., and V.L. were adjudicated children in need of assistance (CINA) on June 14, 2013.

---

[1] S.L.'s parental rights as to V.L. and A.L. were also terminated in these proceedings. She does not appeal.

In November 2013, A.L. was born and was initially permitted to remain with the father and S.L. In December 2013, N.L., J.L., and V.L. returned to the father's care. However, on January 28, 2014, A.L. was also adjudicated CINA. On January 7, 2015, all four children were removed from the father due to his relapse in using controlled substances. The children were placed with S.L. However, due to S.L.'s continued methamphetamine abuse, V.L. and A.L. were removed in March 2015 and placed in foster care. N.L. and J.L were removed from S.L. in April 2015 and placed with their paternal grandmother.

In September 2015, the father was arrested for domestic abuse assault after assaulting S.L. in the parking lot of a bar. N.L. and J.L. were in the father's care at the time for a home visit and were left unsupervised while the father and S.L. were gone. Following the incident, the father entered a guilty plea to assault.

In December 2015, the court placed custody of N.L. and J.L. with their mother, K.G., where they remain.

The termination petition was filed February 2, 2016, seeking to terminate the father's parental rights to all four children and the parental rights of S.L. to her two children, V.L. and A.L. The termination hearing was held May 19, 2016. In two July 10, 2016 orders, the juvenile court terminated the father's parental rights to N.L., J.L., and V.L. under Iowa Code section 232.116(1)(f) (2015)[2] and to A.L.

---

[2] This provision allows the termination of parental rights where a child, four years of age or older, who has been adjudicated CINA and out of the custody of the parents for at least twelve months of the last eighteen months or the last twelve consecutive months, cannot be returned to the parent's care at present.

under section 232.116(1)(h).[3] The court found the children could not be returned to the father's custody, and termination is in their best interests because:

> For three years, the father has struggled with substance abuse, mental health, domestic violence, and criminality. He uses drugs on a daily basis and refuses to comply with drug testing or treatment. The father has discontinued mental health services and psychiatric medications. He continues a relationship with [S.L.]— his past victim of domestic violence who is addicted to meth[amphetamine]. The father has demonstrated an ongoing unwillingness or inability to follow court directives.

The court declined the father's request to hold intact his parental rights to N.L. and J.L., maintain primary physical care with their mother, and enter a bridge order to govern the terms of the custody arrangement. The court also denied the father and uncle's request to place V.L. and A.L. in the custody of the uncle under a guardianship order. The father and uncle now appeal.

**II. Standard of Review.**

We review proceedings for termination of parental rights de novo. *In re D.W.*, 791 N.W.2d 703, 706 (Iowa 2010). Although we are not bound by them, we give weight to the district court's findings of fact, especially when considering the credibility of witnesses. Iowa R. App. P. 6.904(3)(g). "We will uphold an order terminating parental rights if there is clear and convincing evidence of grounds for termination under Iowa Code section 232.116." *D.W.*, 791 N.W.2d at 706. "The primary interest in termination proceedings is the best interests of the child[ren]." *In re C.B.*, 611 N.W.2d 489, 492 (Iowa 2000).

---

[3] This provision allows termination of parental rights where a child, three years of age or younger, who has been adjudicated CINA and out of the custody of the parents for at least six months of the last twelve months or the last six consecutive months, cannot be returned to the parent's care at present.

**III. Analysis.**

*A. Termination.*  In considering termination of parental rights, we follow a three-step analysis:

> First, the court must determine if a ground for termination under section 232.116(1) has been established.  If a ground for termination is established, the court must, secondly, apply the best-interest framework set out in section 232.116(2) to decide if the grounds for termination should result in a termination of parental rights.  Third, if the statutory best-interest framework supports termination of parental rights, the court must consider if any statutory exceptions set out in section 232.116(3) should serve to preclude termination of parental rights.

*D.W.*, 791 N.W.2d at 706-07 (citations omitted).

The father contends termination is not in the children's best interests, and the exception delineated in section 232.116(3)(a)—the closeness of the parent-child relationship—serves to preclude termination.[4]

Pursuant to Iowa Code section 232.116(2), we "shall give primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child."

At the termination hearing, the father testified he uses an illegal substance—THC—every day, including the night before the hearing.  The father also testified he has mental-health issues including ADHD, depression, and anxiety, but he stopped attending therapy and taking psychiatric medications.  He testified there is not really any particular reason why he is not engaging in

---

[4] The father does not challenge the grounds for termination pursuant to Iowa Code section 232.116(1).  We therefore affirm the statutory grounds for termination without addressing the issue.  *See In re P.L.,* 778 N.W.2d 33, 40 (Iowa 2010) ("Because the father does not dispute the existence of grounds . . . , we do not have to discuss this step.").

substance-abuse treatment and therapy to address the barriers to reunifying with his children. He also stated if given additional time to seek reunification with the children he would "probably" go to substance-abuse treatment and therapy.

The father also continued his relationship with S.L., despite the very negative impact on the children and the no-contact order in place as a result of his assault conviction. The father initially testified at the termination hearing that he had not spoken to S.L., but he later admitted that was a lie and he had accepted phone calls from S.L. in violation of the no-contact order. The father failed to comply with court orders in his assault case and has failed to submit to drug testing in these proceedings despite being ordered to do so.

Throughout the CINA proceedings, spanning three years and the entirety of A.L.'s life, the father made no meaningful attempts to complete the efforts necessary to reunify with his children. The children do not deserve to wait any longer to achieve permanency. "It is well-settled law that we cannot deprive a child of permanency after the State has proved a ground for termination under section 232.116(1) by hoping someday a parent will learn to be a parent and be able to provide a stable home for the child." *In re A.B.*, 815 N.W.2d 764, 777 (Iowa 2012) (quoting *P.L.*, 778 N.W.2d at 41). Termination of the father's parental rights is in the children's best interests.

We also find the section 232.116(3)(a)[5] exception does not apply to negate the need for termination in this case. Although we recognize the bond

---

[5] "The court need not terminate the relationship between the parent and child if the court finds . . . [t]here is clear and convincing evidence that the termination would be detrimental to the child at the time due to the closeness of the parent-child relationship." Iowa Code § 232.116(3)(a).

between the father and the children, it does not outweigh the children's desperate need for a safe, stable, and permanent home. Placement for these children has been changed multiple times over the course of the three years of DHS's involvement with the family. Apparently the bond was not strong enough for the father to face his addiction and make any form of steady progress in overcoming his continued use over the three years.

*B. Custody.* The father and uncle both contend the juvenile court improperly determined the custody placement of the children. Because we affirm the termination of the father's parental rights to the two older children, N.L. and J.L., and they remain in the care of their mother, the father's request for a bridge order is inapplicable and we need not address it. As to V.L. and A.L., the father and uncle assert guardianship and custody should have been placed with the uncle.

Iowa Code section 232.117(3) allows the court, upon termination, to place the children with DHS, a suitable child-placing agency, or a relative or other suitable person. However, "[t]here is no statutory preference for a relative. The paramount concern is the best interest of the children." *In re R.J.*, 495 N.W.2d 114, 117 (Iowa Ct. App. 1992).

The juvenile court found placement of V.L. and A.L. with the uncle was not in their best interests due to his being on parole for previous drug convictions; his previous termination of parental rights to a child while in prison in 2008; DHS's belief he could not pass a home study for adoption; his not having continuous custody of V.L., and never having custody of A.L. leading up to termination; his failure to request custody when the children were removed from the parents in

January 2015; his unlikely ability to provide care and structure for V.L. and A.L., who have behavioral issues,[6] in addition to the two children already in his care;[7] his stepson who has an assaultive history and juvenile court involvement; concerns regarding an incident of domestic abuse between the uncle and his wife in June 2013; and his close relationship with the father and the possibility he would not prevent contact between the father and children as necessary to ensure their physical and emotional safety. The court held, "It is in the children's best interest to be placed in the custody and guardianship of DHS for purposes of adoption to a stable, neutral family—who is not enmeshed with the father and his longstanding, complicated issues." We also note DHS workers testified at the termination hearing DHS had found a foster home that agreed to be an adoptive placement for the children.

We acknowledge some of these factors are disputed and some existed when the uncle adopted two other children. Nonetheless, there is a difference between parenting two children and parenting four children, two of whom have behavior issues. The uncle has also apparently done a better job preventing contact with the father of the first two adoptees than he has in relation to the father in these proceedings and V.L. and A.L. Upon consideration of the circumstances, we agree placement with the uncle is not in the children's best interests and affirm the order placing guardianship and custody with the DHS.

---

[6] V.L. has been diagnosed with adjustment disorder with mixed disturbance of emotions and conduct.

[7] One child has been diagnosed with ADHD and obsessive compulsive disorder.

**IV. Conclusion.**

We find termination of the father's parental rights is in the children's best interests, and no exception applies to preclude termination. We also conclude the juvenile court properly determined the guardianship and custody placement of the children. We therefore affirm the termination orders.

**AFFIRMED ON BOTH APPEALS.**